**Petition of Frank LONG, Jr., for a Writ of Habeas Corpus.**

**Civ. No. F–17–61.**

United States District Court
D. Alaska,
at Fairbanks.

Dec. 13, 1961.

Fred D. Crane, of Taylor & Crane, Fairbanks, Alaska, for petitioner.

Ralph E. Moody, Atty. Gen. of Alaska, by John E. Havelock, Dep. Atty. Gen., and William Taylor, Dist. Atty., Fairbanks, Alaska, for the State of Alaska.

Joseph H. Shortell, Jr., Asst. U. S. Atty., Fairbanks, Alaska, for the United States.

PLUMMER, District Judge.

Petitioner seeks the issuance of a writ of habeas corpus and represents that he is unlawfully imprisoned, detained and restrained from his liberty at Nome, Alaska, by a warrant issued out of the District Magistrate Court of the State of Alaska, Second Judicial District, dated August 25, 1961, upon a complaint dated August 24, 1961, charging him with burglary not in a dwelling house, in violation of Section 65–5–32, Alaska Compiled Laws Annotated 1949. The petition recites that the alleged crime was committed and defendant was apprehended at Point Barrow, Alaska, within the boundaries of Naval Petroleum Reserve No. 4. The petition asserts that under Section 11(b) of the Act of July 7, 1958 (72 Stat. 339), 48 U.S.C.A. preceding section 21, hereinafter referred to as the

Alaska Statehood Act, Naval Petroleum Reserve No. 4 was reserved as federal territory and that the courts of the State of Alaska have no jurisdiction over any act or offense committed within the boundaries thereof.

In response to an order to show cause why a writ of habeas corpus should not issue, the State of Alaska filed a memorandum of points and authorities opposing the issuance of said writ on the following grounds:

1. The District Court lacks power to grant a writ of habeas corpus because the prisoner has failed to exhaust the remedies available to him in the courts of the State of Alaska; and

2. The Alaska Statehood Act provides for the exercise of concurrent state and federal jurisdiction in Naval Petroleum Reserve No. 4. No federal law has been violated by holding petitioner in custody pending a determination of his guilt or innocence of a crime committed at Point Barrow, Alaska.

The sole question for determination is whether the federal government has exclusive jurisdiction over the lands lying within the exterior boundaries of Naval Petroleum Reserve No. 4.

Naval Petroleum Reserve No. 4 'was created by Executive Order No. 3797–A on February 27, 1923. It set apart, as a naval petroleum reserve, all of the public lands within the area therein described that were not then covered by valid entry, lease or application. (Petitioner's Exhibit A.) It provides in part:

"The reservation hereby established shall be for oil and gas only and shall not interfere with the use of the lands or waters within the area indicated for any legal purpose not inconsistent therewith."

Petitioner's witness, Daniel A. Jones, Manager of the Land Office, Bureau of Land Management, Fairbanks, Alaska, testified in substance that Executive Order No. 3797–A was still in full force and effect and that the only modification or amendment thereof was by Public Land Order No. 289, dated July 20, 1945 Petitioner's Exhibit B), which deleted the following language therefrom:

"Said lands to be so reserved for six years for classification, examination, and preparation of plans for development and until otherwise ordered by Congress or the President."

Section 7421, Title 10 U.S.C.A., provides that:

"Jurisdiction and control

"(a) The Secretary of the Navy shall take possession of all properties inside the naval petroleum reserves that are or may become subject to the control of and use by the United States for naval purposes.

"(b) The Secretary has exclusive jurisdiction and control over those lands inside naval petroleum reserves numbered 1 and 2 that are covered by leases granted under sections 181–184, 185–188, 189–194, 201, 202–209, 211–214, 223, 224–226, 226d, 226e, 227–229a, 241, 251 and 261–263 of title 30, and shall administer those leases. Aug. 10, 1956, c. 1041, 70A Stat. 457."

There is nothing in Executive Order 3797–A nor in Section 7421, Title 10 U.S.C.A., which by express words or necessary implication confers exclusive jurisdiction over the lands within Naval Petroleum Reserve No. 4 in the United States of America.

Briefly stated, Section 11(b) of the Alaska Statehood Act provides that authority is reserved in the United States, subject to the provisos contained therein, for the exercise by the Congress of the United States of the power of exclusive legislation, as provided by Article I, Section 8, Clause 17, of the Constitution of the United States, in all cases whatsoever over such tracts or parcels of land as immediately prior to the admission of said State were owned by the United States and held for military, naval, Air Force or Coast Guard purposes, including Naval Petroleum Reserve

numbered 4, regardless of how the same were acquired.[1]

Proviso (ii) expressly states that the reservation of the power of exclusive legislation by Congress (1) shall not operate to prevent such lands from being a part of the State of Alaska, or (2) to prevent the State from exercising over and upon such lands, concurrently with the United States, any jurisdiction whatsoever which it would have in the absence of such reservation of authority and which is consistent with the laws hereafter enacted by Congress pursuant to such reservation of authority.

██ I am of the opinion that Congress under Section 11(b) of the Alaska Statehood Act, and particularly under proviso (ii) thereof, granted to the State of Alaska concurrent jurisdiction with the United States over the lands embraced within Naval Petroleum Reserve No. 4, for all purposes, with the exception of those contained in Executive Order No. 3797-A and Section 7421, Title 10 U.S.

C.A., until Congress hereafter enacts legislation to the contrary.

The foregoing conclusion is supported by the legislative history available pertaining to the Alaska Statehood Act. Originally, Sections 11(a) and (b) as they appear in the Act of July 7, 1958 (72 Stat. 339), appeared in S. 50 as Sections 10(a) and (b). In the report of hearings before the Committee on Interior and Insular Affairs, United States Senate, 83rd Congress, second session, on S. 50, entitled A Bill to Provide for the Admission of Alaska Into the Union, the discussion pertaining to Sections 10(a) and (b) [Sections 11(a) and (b) in the Act of July 7, 1958 (72 Stat. 339)] is reported at pages 303-304:

"Mr. Slaughter. Mr. Chairman, may I suggest that in the Hawaii bill the committee adopted a provision which accomplishes the same thing as this but clarifies a good deal of the language, including the language which you are reading now.

---

1. Section 11(b) of the Act of July 7, 1958 (72 Stat. 339), provides as follows:

"(b) Notwithstanding the admission of the State of Alaska into the Union, authority is reserved in the United States, subject to the proviso hereinafter set forth, for the exercise by the Congress of the United States of the power of exclusive legislation, as provided by article I, section 8, clause 17, of the Constitution of the United States, in all cases whatsoever over such tracts or parcels of land as, immediately prior to the admission of said State, are owned by the United States and held for military, naval, Air Force, or Coast Guard purposes, including naval petroleum reserve numbered 4, whether such lands were acquired by cession and transfer to the United States by Russia and set aside by Act of Congress or by Executive order or proclamation of the President or the Governor of Alaska for the use of the United States, or were acquired by the United States by purchase, condemnation, donation, exchange, or otherwise: Provided, (i) That the State of Alaska shall always have the right to serve civil or criminal process within the said tracts or parcels of land in suits or prosecutions for or on account of rights acquired, obligations incurred, or crimes committed within the said State but outside of the said tracts or parcels of land; (ii) that the reservation of authority in the United States for the exercise by the Congress of the United States of the power of exclusive legislation over the lands aforesaid shall not operate to prevent such lands from being a part of the State of Alaska, or to prevent the said State from exercising over or upon such lands, concurrently with the United States, any jurisdiction whatsoever which it would have in the absence of such reservation of authority and which is consistent with the laws hereafter enacted by the Congress pursuant to such reservation of authority; and (iii) that such power of exclusive legislation shall rest and remain in the United States only so long as the particular tract or parcel of land involved is owned by the United States and used for military, naval, Air Force, or Coast Guard purposes. The provisions of this subsection shall not apply to lands within such special national defense withdrawal or withdrawals as may be established pursuant to section 10 of this Act until such lands cease to be subject to the exclusive jurisdiction reserved to the United States by that section."

"Senator Cordon. I am stumbling over the present language. Read the language in the Hawaiian bill quickly for us.

"Mr. Slaughter. S. 49 provides: * * * (Language of the Hawaiian bill read by Mr. Slaughter.) * * *

"Senator Cordon. I want to re-read that. Do you agree with me that that reservation actually gives concurrent authority for legislation?

"Mr. Slaughter. The intention, Senator, is that Congress is to have the power to impose exclusive jurisdiction, but unless and until it does so by subsequent legislation, there is concurrent jurisdiction.

"Senator Cordon. Using this lovely language here, until Congress preempts the field.

Mr. Slaughter (reading): * * *

"Senator Cordon. Is there any objection to the use of the language in the Hawaiian bill insofar as the —I think that probably is the second and third reservations. I am not certain. In any event, let us put it this way: Without objection, the subcommittee will adopt the substance of the Hawaiian language, making as little change as is necessary in the language in the Alaska bill.

"Senator Jackson. I think that is what we have in mind.

"Senator Cordon. I think the approach in the Hawaiian bill is preferable.

"Senator Jackson. The net effect is to give concurrent jurisdiction over the military reservations.

"Senator Cordon. It is an alternative, subordinate jurisdiction that the State has. It really is not concurrent.

"Delegate Bartlett. That language, incidentally, was adopted by the House committee after much, much discussion of this proposition, and I think the Hawaii language was written by the Military Department itself.

"Senator Cordon. I want to say to you, Mr. Bartlett, that my view is that the language in the Hawaiian bill is preferable from the viewpoint of the State of Alaska.

"Delegate Bartlett. I subscribe to your recommendation.

"Senator Cordon. I can see no reason in the world why, for instance, ordinary local laws should not be applicable to these areas unless the Congress elects to set up its own code of laws, whether under the military code or otherwise."

In House Report No. 624, June 25, 1957 (to accompany H.R. 7999), U.S.Code Congressional and Administrative News, Vol. 2, 85th Congress, Second Session, 1958, pages 2934–2935, where the major provisions of the Alaska Statehood Act (H. R. 7999), are set forth, the following statement appears:

"H.R. 7999 contains the following major provisions:

* * * * * *

"12. Retains in the United States the power of exclusive legislation with concurrent jurisdiction over defense and Coast Guard installations in the new State, subject to future congressional action (sec. 11(b))."

As a part of House Report No. 624 (to accompany H.R. 7999), and at page 2963 of the U.S.Code Congressional and Administrative News, Vol. 2, 85th Congress, Second Session, 1958, as a part of a letter from Deputy Attorney General William P. Rogers, to the Honorable Clair Engle, Chairman, Committee on Interior and Insular Affairs, the following statement appears:

"The exceptions to exclusive jurisdiction in Mount McKinley National Park provided in section 10(a), viz., the right of residents to vote and the right of the State of Alaska to serve civil and criminal process in the park and to tax persons and their prop-

erty on the lands included in the park are in accord with the Interdepartmental Committee's recommendations. It is noted that the provisions of section 10(b) as to exclusive jurisdiction in areas owned and held by the United States for military, naval, Air Force or Coast Guard purposes, is subject to the proviso that the reservation of exclusive legislation shall not operate 'to prevent the said State from exercising over or upon such lands, concurrently with the United States, any jurisdiction whatsoever which it would have in the absence of such reservation of authority and which is consistent with the laws hereafter enacted by the Congress pursuant to such reservation of authority.' This language is not clear but the intent is apparently that the State is to have concurrent jurisdiction until Congress provides otherwise. As pointed out in House Report No. 88 on H.R. 2535 (84th Cong.), page 29, with respect to identical language the bill 'Retains in the United States the power of exclusive legislation with concurrent jurisdiction over defense and Coast Guard installations in the new State, subject to future congressional action (sec. 211(b)).' Provision for concurrent jurisdiction is consistent with the Interdepartmental committee recommendations."

Senate Report No. 1163 on S. 49 (85th Cong.), page 26, contains the following statement:

"Jurisdiction Over Certain Existing Federal Reservations

"Section 11 provides that the United States shall retain exclusive jurisdiction over Mount McKinley National Park as now or hereafter constituted, subject to the right of the new State to serve process, levy taxes, and provide the voting franchise to persons within the area.

"This section also reserves the right in Congress to exercise the power of exclusive legislation over lands owned, used, and held by the United States for defense or Coast Guard purposes, immediately prior to admission of the State into the Union, including Naval Petroleum Reserve No. 4. Such power of exclusive legislation is subject only to the right of the State to serve process. However, the State may exercise its full jurisdiction over such areas unless and until Congress supersedes the State actions. The federal power of exclusive legislation will continue only so long as the lands are used for the stated purposes. Thus, the new State will be entitled to exercise its full jurisdiction within military reservations which are in existence at the date of admission, subject to the right of Congress to supersede any and all laws, regardless of their subject matter, for as long as the land is used for the stated purposes, after which time full jurisdiction will revert to the State. The provisions of section 11 do not apply to special national defense withdrawals made pursuant to section 10."

 The petition for a writ of habeas corpus is denied for the following reasons:

(1) Petitioner has failed to prove the allegations in his petition.

(2) Petitioner has failed to exhaust the remedies available to him in the courts of the State of Alaska; and

(3) The State of Alaska has concurrent jurisdiction with the United States of America over the lands embraced within Naval Petroleum Reserve No. 4, for all purposes material to this proceeding.